IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 25-24

_____

**FILED**

**April 30, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: K.L.-1, K.L.-2, & K.G.

_____

Appeal from the Circuit Court of Fayette County
The Honorable Paul M. Blake, Jr., Judge
Case Nos. CC-10-2024-JA-1, CC-10-2024-JA-2, and CC-10-2024-JA-76

VACATED AND REMANDED

_____

Submitted: March 25, 2026
Filed: April 30, 2026

Nancy S. Fraley, Esq.
Fayette County Public
Defender's Office
Fayetteville, West Virginia
Counsel for Petitioner, E.G.

Susan Hill, Esq.
Susie Hill Attorney at Law, PLLC
Cross Lanes, West Virginia
Guardian ad Litem for the
Minor Children,
K.L.-1, K.L.-2, and K.G.

John B. McCuskey, Esq.
Attorney General
Michael R. Williams, Esq.
Solicitor General
Wyclif S. Farquharson, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent,
Department of Human Services

JUSTICE WOOTON delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected.  These findings shall not be set aside by a reviewing court unless clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      "In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under [W. Va. Code § 49-4-604], it must hold a hearing under [W. Va. Code § 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

3.      "The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

i

WOOTON, Justice:

Petitioner Mother, E.G., appeals the circuit court's December 13, 2024, dispositional order terminating her parental rights to her three children, K.L.-1. K.L.-2, and K.G.[1]  During adjudication, Petitioner Mother only stipulated to exposing the children to unsafe and/or unsuitable living conditions, and was adjudicated solely on this basis.  However, at disposition, the circuit court terminated Petitioner Mother's parental rights based on conditions upon which she was not adjudicated, including failure to seek mental health treatment, substance abuse, and failure to seek appropriate prenatal care while pregnant with K.G.  On appeal, Petitioner Mother contends that the circuit court erred by terminating her parental rights based on these conditions upon which she was not adjudicated.  The Department of Human Services ("DHS") and guardian ad litem ("GAL")[2] concede that the circuit court erred by terminating Petitioner Mother's parental rights based on conditions upon which she was not adjudicated, and they urge this Court to vacate the circuit court's dispositional order.

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] In the GAL's brief to this Court, she argued that the circuit court's order terminating Petitioner Mother's parental rights should be affirmed.  However, during oral argument, the GAL agreed with Petitioner Mother and the DHS that the circuit court erred by terminating Petitioner Mother's parental rights based on conditions for which she was not adjudicated.

1

After review, we conclude that the circuit court erred by terminating Petitioner Mother's parental rights based on conditions of abuse and neglect upon which she was not adjudicated. We therefore vacate the circuit court's dispositional order and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2024, the DHS filed a child abuse and neglect petition alleging that Petitioner Mother abused and/or neglected K.L.-1 and K.L.-2. When the petition was filed, K.L.-1 was two years old and K.L.-2 was eleven months old. The petition alleged that Petitioner Mother (1) abused substances which impaired her ability to properly care for the children; (2) failed to protect the children from the substance abuse of others; and (3) subjected the children to unsafe and/or unsuitable living conditions. According to the petition, Petitioner Mother told the DHS that she and her children had been living in an apartment with multiple adult occupants for two months because she had nowhere else to go. Further, the petition provided that the Child Protective Services ("CPS") workers who interviewed Petitioner Mother observed drug paraphernalia inside the apartment. The CPS workers also reported that K.L.-1 and K.L.-2 appeared to be sick, unclean, and sleeping on soiled blankets. After the petition was filed, the circuit court transferred custody of the children to the DHS.

The circuit court held the preliminary hearing on February 21, 2024. Counsel for Petitioner Mother informed the court that Petitioner Mother had moved out of her prior

2

apartment and was currently residing in a house with her mother. Further, counsel stated that Petitioner Mother would not return to her prior apartment and that "[s]he wants to stay with her mother until she can get an apartment of her own. She tells me that she has applied for HUD and she's [fifteenth] on the waiting list." The circuit court's order following this hearing required Petitioner Mother to submit to drug screens.

The Multi-Disciplinary Treatment Team ("MDT") issued a report on March 6, 2024, noting that Petitioner Mother tested positive for THC in two recent drug screens. This report also provided that Petitioner Mother was currently pregnant and "has not received prenatal care yet."

The circuit court conducted the adjudicatory hearing on March 18, 2024. During the hearing, Petitioner Mother stipulated to exposing K.L.-1 and K.L.-2 to unsafe and/or unsuitable living conditions.[3] As her counsel explained to the court, Petitioner Mother admitted that

> she and her children were living in an unsafe and unsuitable home and that is neglect as defined by West Virginia Code. . . . She also acknowledges that substance use is an issue that would need to be addressed in any improvement period and can be raised by the [DHS] and/or guardian ad litem if a dispositional hearing is ever [held].

---

[3] Petitioner Mother also submitted a written stipulation in which she acknowledged neglecting her children because they "were living in a home that was unsafe and unsuitable[.]" Her written stipulation also acknowledged that "substance use is an issue which will be addressed in any improvement period and can be raised" at disposition.

While Petitioner Mother only stipulated to the unsafe and/or unsuitable living conditions allegation, the circuit court asked her about her substance abuse issues during the hearing. Petitioner Mother acknowledged that she used marijuana, but denied using it recently. The circuit court also noted that Petitioner Mother was pregnant and asked if she had sought prenatal care. Petitioner Mother replied, "Not yet." At the conclusion of the hearing, the circuit court accepted Petitioner Mother's stipulation to the unsafe and/or unsuitable living conditions allegation. The circuit court's order following the hearing provided that Petitioner Mother was only being adjudicated on the unsafe and/or unsuitable living conditions allegation, noting that Petitioner Mother "*is not admitting to substance abuse impairing her ability to properly care for the child[ren,]* [however,] substance abuse may be a contested issue at final disposition." (Emphasis added). Additionally, the circuit court's adjudicatory order required Petitioner Mother to undergo a psychological evaluation for parental fitness.

Petitioner Mother underwent a psychological evaluation for parental fitness on May 6, 2024. The evaluator, a licensed clinical psychologist, diagnosed her with "other specified schizophrenia spectrum and other psychotic disorder, unspecified depressive disorder, and generalized anxiety disorder." The evaluator recommended that Petitioner Mother seek inpatient treatment for her mental health issues.

On June 11, 2024, Petitioner Mother filed a motion for a post-adjudicatory improvement period. During the hearing on this motion, the DHS and GAL argued that the improvement period should be denied because Petitioner Mother (1) continued to test

4

positive for THC despite the fact that she was pregnant; (2) made a suicidal remark to her service provider; and (3) refused mental health treatment that had been offered to her following her psychological evaluator's recommendation. Further, counsel for Petitioner Mother informed the court that Petitioner Mother had secured housing with the assistance of a service provider, but had not completed "the move in process." Counsel for Petitioner Mother also acknowledged that Petitioner Mother's "drug screens continue to be positive for marijuana." By order entered on July 8, 2024, the circuit court denied Petitioner Mother's motion for an improvement period.[4]

In July of 2024, Petitioner Mother gave birth to K.G. On July 25, 2024, the DHS filed an amended petition, repeating the allegations that were contained in the initial petition and alleging that K.G. is "a neglected child due to [Petitioner Mother] not having safe and/or suitable housing." The amended petition noted that upon admission to the hospital, Petitioner Mother tested positive for THC. The circuit court held an adjudicatory hearing regarding the newborn child, K.G., on August 30, 2024. During this hearing, counsel for Petitioner Mother stated that she was "uncomfortable doing a stipulation

---

[4] The circuit court's order also instructed the DHS to prepare family case plans. On July 18, 2024, the DHS filed the family case plans for K.L.-1 and K.L.-2. These family case plans provide that Petitioner Mother's goals are "to be substance free, to obtain safe and suitable housing, to seek treatment for mental health conditions, to follow through with prenatal care, [and] to find and sustain gainful employment." We note that neither family case plan was signed by Petitioner Mother or her attorney.

[because] . . . my client has housing and did have housing at the time of the birth of this third child." The State, by proffer, informed the circuit court that the newborn child

> was born during the pendency of an abuse and neglect case. . . . We're still struggling with some of the housing issues that we've had going on in this case. And likewise [Petitioner Mother] would be unable to take custody of the child. . . . So I believe the [DHS] can show by clear and convincing evidence [that K.G.], is an abused or neglected child under West Virginia law and the child – and the case needs to be set for disposition.

The court then asked if the newborn child, K.G., was born drug addicted. Counsel for the DHS told the court that K.G. was born with THC in her system. Based on the DHS's proffer, the circuit court determined that Petitioner Mother "provided an unsafe or unsuitable environment for a young child or a baby. And so, the court will find based on the evidence submitted this morning by the [DHS] that there is clear and convincing evidence that [K.G. is] abused or neglected." While this hearing largely concerned the fact that Petitioner Mother and her newborn child, K.G., tested positive for THC, the sole ground upon which Petitioner Mother was adjudicated for abusing or neglecting K.G. was "unsafe and/or unsuitable housing."

On October 28, 2024, the circuit court held a dispositional hearing and heard testimony from Petitioner Mother and Kacy Burgess, the CPS employee who was assigned to the case. Ms. Burgess testified that she believed Petitioner Mother was adjudicated for substance abuse and unsafe housing. She stated that Petitioner Mother consistently tested positive for THC throughout the case. Further, she stated that the newborn child, K.G.,

6

tested positive for THC at birth. Ms. Burgess testified that Petitioner Mother was repeatedly told to stop using marijuana. When asked about the unsafe housing issue, Ms. Burgess stated that Petitioner Mother "has secured housing to the best [of] my knowledge. She has not moved in there and made it suitable for the children." During cross-examination, Ms. Burgess conceded that she had not been to Petitioner Mother's new apartment. Counsel for Petitioner Mother then asked, "And so, you don't know if there's furniture for the children or not in that apartment, correct?" Ms. Burgess replied, "I just know the provider report [from August of 2024] states there is not." Finally, Ms. Burgess testified that the DHS spoke to Petitioner Mother multiple times about seeking mental health treatment, but Petitioner Mother refused to seek such treatment.

Petitioner Mother testified that she had obtained an apartment "a few months" ago, and had started living in it "a week ago." She explained that she had not moved into the apartment earlier because she did not have furniture. She testified that the apartment now had beds, a couch, and other necessities for the children. Photographs of the furnished apartment were submitted and entered into the record. Additionally, Petitioner Mother testified that she had started to treat her mental health issues by taking prescription medication. Finally, Petitioner Mother admitted that she had failed multiple drug screens during the case.

At the conclusion of the hearing, the DHS argued that Petitioner Mother's parental rights should be terminated, explaining that "in a disposition then the question becomes, have the issues been corrected or can they be corrected in the near future. It's

pretty obvious that all of these issues, the housing, the marijuana use, the mental health components . . . those have not been corrected." By contrast, counsel for Petitioner Mother argued that her parental rights should not be terminated because she had remedied her unsafe and/or unsuitable housing issue, and was taking prescription medication to address her mental health issues.

Following the parties' arguments, the circuit court terminated Petitioner Mother's parental rights to the three children. It concluded that Petitioner Mother "has failed to secure safe housing for her and her children." The court noted that Petitioner Mother had recently moved into a new apartment but stated that this move, a week before the disposition hearing, "comes too late." Additionally, the court cited her marijuana use, failure to seek mental health treatment, and lack of appropriate prenatal care as reasons supporting termination. Similarly, the circuit court's subsequent dispositional order cited five reasons in support of its ruling terminating Petitioner Mother's parental rights: (1) failed drug screens; (2) K.G. testing positive for THC at birth; (3) failure to seek "psychological/psychiatric treatment until a short period prior [to] the disposition" hearing; (4) "[o]nly very shortly prior to this disposition hearing did [Petitioner Mother] attempt and secure housing"; and (5) failure to seek appropriate prenatal care while pregnant with K.G.

Following entry of the circuit court's order terminating her parental rights, Petitioner Mother filed the instant appeal.

## II. STANDARD OF REVIEW

We apply the following standard of review:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). With this standard in mind, we consider the parties' arguments.

## III. ANALYSIS

On appeal, Petitioner Mother argues that the circuit court erred by terminating her parental rights based on conditions for which she was not adjudicated, including failure to seek mental health treatment, substance abuse, and failure to seek appropriate prenatal care while pregnant with K.G. Further, Petitioner Mother asserts that she remedied the sole issue upon which she was adjudicated, unsafe and/or unsuitable

9

housing.  The DHS and GAL agree that the circuit court erred by terminating Petitioner Mother's parental rights based on conditions for which she was not adjudicated.[5]

After review, we agree with the parties and find that the circuit court erred by terminating Petitioner Mother's parental rights based on conditions that were not the subject of adjudication.  We begin our analysis by reviewing the two-step adjudication and disposition process.  We then address the issues—substance abuse, failure to seek mental health treatment, failure to seek appropriate prenatal care, and unsafe housing—that the circuit court relied on in support of its ruling terminating Petitioner Mother's parental rights.

This Court has recognized that adjudication and disposition is a two-step process and that a court cannot make dispositional findings prior to adjudication.  "The *first* phase culminates in an adjudication of abuse and/or neglect. The *second* phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected." *In re A.P.-1*, 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019) (Emphasis in original).  *See also* Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) ("In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under [W. Va. Code § 49-4-604], it must hold a

---

[5] While the DHS concedes error, we recognize that "a confession of error does not relieve this Court of its judicial duty to independently . . . determine if [it] . . . is meritorious." *Freeland v. Marshall*, 249 W. Va. 151, 160, 895 S.E.2d 6, 15 (2023).

hearing under [W. Va. Code § 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case.").

This Court has made clear that "termination of parental rights may not be fundamentally premised on conditions of abuse and/or neglect upon which a parent has not been properly adjudicated." *In re K.L.*, 247 W. Va. 657, 666, 885 S.E.2d 595, 604 (2022).[6] Additionally, we have observed that "[t]he Court's insistence upon proper adjudication of the issues underlying abuse and neglect is not a 'hollow formality.' Rather, this Court has made clear that defects in adjudication implicate the due process protections afforded to parents[.]" *Id.* at 666, 885 S.E.2d at 604. Similarly, this Court has stated that

> [t]he Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes detailing fair, prompt, and thorough procedures for child abuse and neglect cases are not mere general guidance; rather, they are stated in mandatory terms and vest carefully described and circumscribed discretion in our courts, intended to protect the due process rights of the parents as well as the rights of the innocent children.

---

[6] *See In re Lilith H.*, 231 W. Va. 170, 181, 744 S.E.2d 280, 291 (2013) ("The circuit court then terminated their parental rights on the basis of their continued acrimony, which was never even alleged to constitute abuse and/or neglect in the petition or at any time during the proceedings. This action served to 'back door' adjudication."); *In re C.L.*, 249 W. Va. 95, 104, 894 S.E.2d 877, 886 (2023) (reversing termination where the "petition never alleged Father's abandonment of C.L. and A.L.-1., and his adjudication related only to conditions of inadequate housing for them."); *In re P.M.*, No. 25-77, 2025 WL 3090488, at *4 (W. Va. Nov. 5, 2025) (memorandum decision) (reversing termination where "the circuit court's disposition was premised on matters upon which the petitioner was not adjudicated . . . As a result of this dispositional defect and the inadequacy of the order, we agree that the termination of petitioner's parental rights must be vacated.").

*In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001).

In the instant case, Petitioner Mother was only adjudicated on one issue: unsafe and/or unsuitable living conditions. However, during the dispositional hearing, the DHS and the circuit court focused on multiple issues that were not the subject of adjudication: substance abuse, failure to seek mental health treatment, and failure to seek appropriate prenatal care. As discussed below, we find that the circuit court erred by terminating Petitioner Mother's parental rights based on issues that were not the subject of adjudication. Further, we explain our conclusion that the circuit court erred by finding that Petitioner Mother "failed to secure safe housing for her and her children."

During the dispositional hearing and in its subsequent order terminating Petitioner Mother's parental rights, the circuit court cited her marijuana use and failed drug screens in support of its decision to terminate her parental rights. The petition contained allegations of substance abuse; however, Petitioner Mother did not stipulate to substance abuse and was not adjudicated on this basis. While the circuit court's adjudicatory order stated that substance abuse was an issue that could be raised at disposition, the order also explicitly provided that Petitioner Mother "is not admitting to substance abuse impairing her ability to properly care for the child[ren.]" This Court recently considered a similar case in which the DHS did not adjudicate a parent of substance abuse but attempted to reserve the right to present evidence on substance abuse during disposition. We explained that the DHS

never amended the petition and/or sought to reopen adjudication to establish substance abuse. . . . . While certainly substance abuse was alleged in the petition, petitioner quite deliberately declined to stipulate to those allegations and [the DHS] made no effort to ensure that this alleged condition of abuse and/or neglect was properly adjudicated.

*In re K.L.*, 247 W. Va. at 665-66, 885 S.E.2d at 603-04.

Similarly, in the instant case, despite Petitioner Mother repeatedly testing positive for THC, the DHS never sought to reopen adjudication to adjudicate her on this basis. This is especially perplexing given that the petition was amended in July of 2024 after Petitioner Mother gave birth to K.G. At that time, both Petitioner Mother and the newborn child, K.G., tested positive for THC. Despite these positive tests, the sole ground upon which Petitioner Mother was adjudicated for abusing or neglecting her newborn child, K.G., was "unsafe and/or unsuitable housing."[7] Based on the foregoing, and consistent

---

[7] The circuit court repeatedly highlighted the fact that K.G. tested positive for THC at birth. However, after the amended petition was filed, Petitioner Mother was only adjudicated of providing unsafe and/or unsuitable housing to K.G. This Court has previously reminded circuit courts of "their authority, if not *obligation*, to compel newly-discovered or developed abuse and neglect allegations to be made part of a petition" through amendment of the petition lest those issues remain unaddressed. *In re Lilith H.*, 231 W. Va. at 182, 744 S.E.2d at 292 (Emphasis in original). Rule 19(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides:

Amendments After the Adjudicatory Hearing.—If new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition rather than in a separate petition in a new civil action, and the final adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition.

(continued . . .)

13

with our previous observation that "termination of parental rights may not be fundamentally premised on conditions of abuse and/or neglect upon which a parent has not been properly adjudicated," we find that the circuit court erred at disposition by terminating Petitioner Mother's parental rights based, in part, on substance abuse.[8] *In re K.L.*, 247 W. Va. at 666, 885 S.E.2d at 604.

---

*See* Syl. Pt. 5, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006) ("To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the [DHS's] petition, then pursuant to Rule 19 of the *Rules of Procedure for Child Abuse and Neglect Proceedings*, the circuit court has the inherent authority to compel the Department to amend its petition to encompass the evidence or allegations.").

[8] This Court has recognized that drug screening may be required and considered in abuse and neglect cases even though substance abuse is not part of adjudication:

> We do not suggest that drug screening may only be required in cases where adjudication is based upon substance abuse. In this case, we find that petitioner's failure to drug screen was an improper basis for termination—not because he was not adjudicated as having a substance abuse issue—but because it was not properly incorporated into the terms of petitioner's improvement period and a statutorily required family case plan.

*In re K.L.*, 247 W. Va. at 669, 885 S.E.2d at 607. We do not minimize the fact that Petitioner Mother repeatedly tested positive for THC. Substance abuse was one of the predominant issues during the proceedings below. However, the parties' clear focus on substance abuse should have compelled the DHS and/or the circuit court to properly adjudicate Petitioner Mother on this issue. We also note that while Petitioner Mother failed numerous drug screens in this case, she was not granted an improvement period; thus, her failed drug screens did not constitute a failure to comply with the terms of an improvement period. Additionally, the appendix record includes two family case plans with the stated goal of Petitioner Mother staying drug free; however, neither Petitioner Mother, nor her attorney, signed these family case plans.

14

Likewise, during the dispositional hearing and in its subsequent order, the circuit court cited Petitioner Mother's failure to seek mental health treatment and failure to seek appropriate prenatal care while pregnant with K.G. in support of its decision to terminate her parental rights. The abuse and neglect petition did not contain any allegations as to Petitioner Mother's mental health issues or her failure to seek appropriate prenatal care, and the DHS did not amend the petition to add these allegations. Further, Petitioner Mother did not stipulate to failing to seek mental health treatment or failing to seek appropriate prenatal case, and she was not adjudicated on either basis. For these reasons, we find that the circuit court erred by terminating Petitioner Mother's parental rights based, in part, on her failure to seek treatment for mental health issues and failure to seek appropriate prenatal care.

Finally, we address the circuit court's conclusion that Petitioner Mother "failed to secure safe housing for her and her children." During the dispositional hearing, the CPS worker testified that Petitioner Mother had not remedied her housing situation. However, the CPS worker conceded that she had not visited Petitioner Mother's new apartment and that her opinion was based on information contained in a provider report that was written two months prior to the dispositional hearing. By contrast, Petitioner Mother testified that she had recently moved into her new apartment and had obtained furniture and necessary supplies to care for the children. Petitioner Mother submitted photographs of the furnished apartment to the circuit court. This Court has held that "[t]he standard of proof required to support a court order limiting or terminating parental rights

15

to the custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). Based on our review of the dispositional testimony, we find that there was not "clear, cogent, and convincing proof" presented that Petitioner Mother had failed to remedy her housing issue. The unsafe and/or unsuitable housing allegation arose due to Petitioner Mother living in an apartment (1) with multiple adult occupants; (2) containing drug paraphernalia; and (3) that had unclean living conditions for the children. It is undisputed that Petitioner Mother moved out of this apartment shortly after the petition was filed. She then lived with her mother until she obtained her new apartment. The only testimony presented to the circuit court regarding Petitioner Mother's current housing situation was that she had secured a new apartment for herself, and had acquired furniture and necessities for the children. Based on this testimony, we find that the DHS did not present "clear, cogent, and convincing proof" that Petitioner Mother failed to secure safe housing for herself and her children.[9] *Id.*

Based on all of the foregoing, we conclude that the circuit court erred by terminating Petitioner Mother's parental rights based upon (1) substance abuse, failure to seek mental health treatment, and failure to seek appropriate prenatal care for K.G., conditions for which she was not adjudicated; and (2) unsafe and/or unsuitable housing, because the DHS failed to prove that Petitioner Mother had not remedied this condition of

---

[9] The DHS's brief concedes that "[t]he testimony at disposition was that Petitioner [Mother] had obtained suitable housing."

16

abuse and neglect. We therefore vacate the circuit court's dispositional order and remand for further proceedings including but not limited to reopening of adjudication and amendment of the subject petition.[10]

## IV. CONCLUSION

We vacate the circuit court's December 13, 2024, order, and remand to the circuit court for further proceedings consistent with this opinion.

Vacated and Remanded.

---

[10] In her brief to this Court, Petitioner Mother also argued that the circuit court erred by denying her request for an improvement period. Because this matter is being vacated and remanded, we need not address this assignment of error.

17