# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**September 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.H., A.H., and R.H.**

**No. 20-0218** (Mercer County 19-JA-88-DS, 19-JA-89-DS, 19-JA-90-DS)

## MEMORANDUM DECISION

Petitioner Father S.H., by counsel Gerald Linkous, appeals the Circuit Court of Mercer County's February 10, 2020, order terminating his parental rights to B.H., A.H., and R.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Earl H. Hager, filed a response on behalf of the children in support of the circuit court's order. Respondent Mother A.H., by counsel William O. Huffman, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period or other less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner assaulted his then ten-year-old daughter, B.H., and that the child required medical attention as a result. B.H. disclosed that petitioner was drunk at the time of the assault and that he had attempted to get the child to call a friend to bring him more beer. Following B.H.'s refusal to relinquish her cellular phone, petitioner twisted the child's arm, "elbowed her jaw," and punched her in the stomach with a closed fist multiple times. Law enforcement responded and confirmed that petitioner was intoxicated, smelled of alcohol, and was slurring his speech. Petitioner was arrested and charged with child abuse resulting in injury and domestic battery. The children also disclosed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

witnessing petitioner "give [his girlfriend] a bloody nose" and stated that he is mean to his girlfriend when drunk. According to the DHHR, petitioner was previously adjudicated as an abusing parent in 2013 for alcohol abuse and domestic violence, but completed an improvement period, and retained his parental rights.

Petitioner stipulated to the current allegations in December of 2019, and admitted that he abused the children through excessive corporal punishment, physical abuse while intoxicated, and alcohol abuse. Thereafter, petitioner moved for a post-adjudicatory improvement period, which the DHHR and guardian opposed.

The circuit court held a final dispositional hearing in January of 2020. The DHHR presented evidence that it opposed the granting of an improvement period because the issues raised in the current petition, domestic violence and alcohol abuse, are the same issues that caused petitioner to be adjudicated as an abusing parent in 2013. Following the prior abuse and neglect proceeding, petitioner exercised custody of the children only on weekends. The psychological evaluator who performed petitioner's psychological evaluation testified that petitioner was "quite guarded" during the evaluation and attempted to present himself in a positive manner. According to the evaluator, petitioner did not acknowledge what he had done to B.H., but freely admitted to consuming "a fairly large amount of alcohol" and to being intoxicated. Despite that admission, petitioner denied that he had an alcohol problem. The evaluator diagnosed petitioner with "persistent depressive disorder" and "moderate level alcohol abuse disorder." The evaluator recommended that petitioner be required to submit to consistent alcohol testing and that inpatient treatment would be "strongly recommended" if he tests positive "at any point" for alcohol. Ultimately, the evaluator declined to opine on whether petitioner's relationship with his children was "salvageable" because he did not have any context as to how the children felt about petitioner.

The DHHR called the children's therapist who testified that she diagnosed the children with post-traumatic stress disorder related to petitioner's domestic violence and alcohol abuse. According to the therapist, A.H. and R.H. disclosed an incident where petitioner struck his girlfriend in the face, causing her nose to bleed and stain a bed sheet. With regard to the children's relationship with petitioner, R.H. and A.H. reported that petitioner was "mean" and they "don't really care . . . if they have any encounters with him." The therapist reported that B.H. expressed a desire to communicate with petitioner over the phone "because he can't hit her over the phone." When asked whether visitation with petitioner was appropriate, the therapist opined that the children still expressed "a lot of fear and frustration" with petitioner and that it would be in their best interest to be "fully rehabilitated" and for petitioner to be fully rehabilitated prior to any contact. The therapist estimated that the children could be fully rehabilitated in three to four months. The therapist testified that treatment was going well generally, but that the children had setbacks in therapy prior to scheduled court hearings.

Two social workers from the children's respective schools testified that the children had shown a marked improvement in attendance and performance since their removal from petitioner's custody in June of 2019. One of the workers testified that B.H. disclosed that she was often tired at school because "when she would go to [petitioner's home] that he would drink heavily and she felt like she had to stay awake [to] make sure that [petitioner] was okay and make sure that her

little sisters were getting taken care of." The worker confirmed that B.H. would typically miss school on Mondays or be tired on Mondays.

Petitioner denied that he punched his girlfriend in the face and testified that he "did not recall" punching his daughter B.H., but considered there was a "high possibility" that he did so while he was drunk. According to petitioner, he had been an alcoholic for "[t]en years," and he had an anger problem while drinking. Petitioner testified that he participated in an inpatient treatment in May of 2019 for four or five days and was prescribed medication to help manage his alcohol use, but he did not utilize that prescription. Further, petitioner admitted that he did not participate in follow up treatment as recommended. Petitioner testified that he was currently subject to home confinement as a condition of his bond for the felony charge related to the incident alleged in the petition. He admitted that in December of 2019, he drank alcohol in violation of the terms of his home confinement and believed that his term of home confinement was extended as a result.

Following the presentation of evidence, the circuit court found that an improvement period was not in the children's best interest. The court noted its concern with petitioner's failure to follow through with alcohol abuse treatment in May of 2019, prior to the filing of the petition. The circuit court also considered the evidence that the children's behaviors worsened as court hearings approached and that the children were well adjusted in their mother's custody. Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. The circuit court terminated petitioner's parental rights in its February 10, 2020, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

---

[2]The children's mother was a nonabusing parent. According to the parties, the children have achieved permanency in her custody.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period. According to petitioner, sufficient evidence was presented that he would fully participate in the terms of an improvement period and, therefore, the circuit court abused its discretion in denying his motion. Petitioner relies on his own testimony, that of his psychological evaluator, and the children's therapist in support of his motion and asserts that no evidence was presented that petitioner was incapable of correcting the conditions of abuse and neglect. We disagree.

In order to be granted a post-adjudicatory improvement period, West Virginia Code § 49-4-610(2)(B) requires that petitioner "demonstrate[], by clear and convincing evidence, that [he was] likely to fully participate in the improvement period."[3] "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Here, petitioner failed to present clear and convincing evidence that he would fully participate in the improvement period. Although petitioner testified that he was willing to participate in services to remedy the conditions of abuse and neglect, he presented contradictory evidence as to whether he followed through with the recommendations of the alcohol abuse treatment facility. As mentioned, above, petitioner participated in that program for four or five days, but neglected to participate in follow up treatment as recommended and to utilize prescribed medication. Furthermore, petitioner admitted that he continued to use alcohol after the filing of the petition and in violation of the terms of his home confinement. Based on this evidence, we find the circuit court did not abuse its discretion in denying his motion for a post-adjudicatory improvement period.

Petitioner also argues that the circuit court's final order contains inadequate findings of fact and conclusions of law to support the termination of his parental rights. Petitioner correctly notes that

> "[w]here a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by [West Virginia Code § 49-4-604] on the record or in the order, the order is inadequate." Syl. Pt. 4, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 9, *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013). Notably, our holding cited in *Lilith H.* provides that relevant findings must be made "in the order *or* on the record." *Id.* (emphasis added). At the dispositional hearing, the circuit court made findings that petitioner failed to follow through with previous alcohol abuse treatment in May of 2019. The circuit court also considered the extensive testimony of petitioner's psychological evaluator and the evaluator's ultimate conclusion to defer reunification with the children given their attitude towards petitioner. To that end, the circuit court considered the testimony of the children's therapist that the children harbored resentment and anger towards petitioner and suffered therapy setbacks related to upcoming court hearings. Accordingly, the circuit court did not "merely declare there was no reasonable

---

[3]West Virginia Code § 49-4-610(2)(A) also requires that the parent "file[] a written motion requesting the improvement period," which, according to the record, petitioner failed to do.

4

likelihood" that petitioner could not remedy the conditions of abuse and neglect, as petitioner claims. Instead, the circuit court based its decision upon petitioner's inability to comply with prior alcohol abuse treatment, his continued alcohol use during the proceedings, and the best interests of the children. Upon our review, we find that this evidence adequately supports the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future. Accordingly, we find no merit to petitioner's argument that the circuit court's findings of fact are so inadequate as to require vacation of the order terminating petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. The circuit court may find that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" when "the abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through with the recommended and appropriate treatment." W. Va. Code § 49-4-604(d)(1). Here, petitioner was offered alcohol abuse treatment just one month prior to physically assaulting his daughter while intoxicated. Yet, petitioner showed that he would not follow through with that treatment. Moreover, he did not utilize medication prescribed to curb his alcohol abuse and did not attend follow up treatment as recommended. Instead, he continued to abuse alcohol. Finally, even after the children were removed and petitioner was charged with felony child abuse resulting in injury, he admitted that he continued to use alcohol. This evidence fully supports the finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect and abuse due to his inability to follow through with treatment.

Petitioner argues that the circuit court should have imposed a less-restrictive dispositional alternative, such as the termination of his custodial rights only. He asserts that continued contact would be in the best interests of the children. In contrast, we note the testimony of the children's therapist opined that continued contact was not in the children's best interest. Further, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future is fully supported by the record, we find no error in the circuit court's termination of petitioner's parental rights.

5

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 10, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison