IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-623

_____

FILED
**November 8, 2023**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In re C.L., A.L.-1, A.L.-2, and A.L.-3

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tera L. Salango, Judge
Case Nos. 21-JA-539, 21-JA-540, 22-JA-160, and 22-JA-161

VACATED AND REMANDED WITH INSTRUCTIONS

_____

Submitted:  September 12, 2023
Filed:  November 7, 2023

Jason Lord, Esq.
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Spencer J. Davenport,, Esq.
Assistant Solicitor General
Brittany Ryers-Hindbaugh, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent
Department of Health and Human Resources

J. Rudy Martin, Esq.
Charleston, West Virginia
Guardian Ad Litem

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1. "'Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996)." Syllabus Point 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

2. "'A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.'

Syllabus, *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960)." Syllabus Point 7, *In re Antonio R.A.*, 228 W. Va. 380 719 S.E.2d 850 (2011).

3.     "'To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the Department of Health and Human Resource[s]'s petition, then pursuant to Rule 19 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* [1997] the circuit court has the inherent authority to compel the Department to amend its petition to encompass the evidence or allegations.' Syl. Pt. 5, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006)." Syllabus Point 6, *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013).

4.     "'To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named." Syllabus Point 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023).

5. "'Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the . . . case [will be] remanded for compliance with that process[.]' Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001)." Syllabus Point 5, *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013).

**WALKER, Chief Justice:**

After Petitioner Father A.L.[1] was seen living out of a car with two of his children and their mother, the Respondent West Virginia Department of Health and Human Resources filed a petition alleging abuse and neglect by the parents based on their failure to provide adequate housing. In an amended petition adding Father's two other children to the proceedings, DHHR repeated the lack-of-housing allegations even though they lived with a different mother and had not seen Father for years. The circuit court ultimately terminated Father's parental rights to all four children—two on the basis of abandonment even though that was never alleged nor a reason on which the circuit court based adjudication, and two because of inadequate housing even though Father presented evidence suggesting he had obtained housing by the time of disposition. As explained below, we find the circuit court failed to follow the process established by the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes, so we vacate the dispositional orders and remand for further proceedings.

---

[1] We use initials to identify the parties in cases involving sensitive facts. *See In re L.W.*, 245 W. Va. 703, 706, 865 S.E.2d 105, 108 (2021) (citing W. Va. R. App. Proc. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990)).

# I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2021, DHHR filed a petition alleging abuse and neglect of C.L. and A.L.-1 because their mother[2] and Father lacked adequate housing. The petition alleged that Child Protective Services received a referral that all four were living out of a car in the summer months and that a CPS worker observed Father and both children asleep in the car with a battery-operated fan on the car dashboard. Father apparently explained that they were staying in the car because the paternal grandparents' home would not be appropriate for the children, so the CPS worker placed the children with their paternal aunt under a temporary parenting plan. DHHR also alleged general and unsubstantiated abuse and abandonment of C.L. and A.L.-1.[3]

In April 2022, DHHR amended the petition to include Father's two other children, A.L.-2 and A.L.-3, who, at the time of the filing of the amended petition, lived with their non-abusing mother and did not have relationships with Father. The amended petition did not contain any new allegations of abuse and neglect as to these two children, but only repeated the improper housing allegations contained in the original petition.

---

[2] The circuit court terminated the parental rights of the children's mother, N.P., below. She did not appeal the termination.

[3] The allegations lacked specificity, evidenced by DHHR's use of the word "child" instead of "children" and references to sexual abuse or sexual exploitation though DHHR offered no specific facts to support such allegations.

The circuit court, at a preliminary hearing in September 2021, ordered DHHR to provide Father with parenting and adult life skills services, supervised visits, and random drug screens. Father stopped participating in those services in February 2022, so the court terminated them due to his noncompliance. Father claimed he stopped participating in services because he wished instead to focus on his relationship with his new girlfriend.

At a May 2022 hearing, after multiple continuances, the circuit court adjudicated Father as neglectful of C.L. and A.L.-1 because of his inability to provide the children with shelter and other necessary items. It also concluded that Father abused the children, though it made no factual findings to support that conclusion.

In June 2022, the circuit court adjudicated Father of neglecting A.L.-2 and A.L-3 because he had not seen them for at least two years and made no effort to do so, he did not know the children's birthdays, and he provided no financial or emotional support aside from wage garnishment. It also concluded that Father abused A.L.-2 and A.L-3, though, again, it made no factual findings to support that conclusion, and the amended petition included no specific allegations of abuse. The same day, the circuit court addressed disposition for Father as to C.L. and A.L.-1. Father testified that he had obtained an apartment in Covington, Virginia, three months before the hearing, had established full-time employment at McDonalds, had purchased two cars, and was recently married. DHHR presented no evidence to contradict Father's testimony. Instead, it introduced

3

evidence that Father failed to comply with the services designed to help him obtain housing and remedy the conditions alleged in the petition. Instead of directing DHHR to conduct further inquiry into Father's contention that he had obtained housing and employment, the circuit court terminated Father's parental rights to C.L. and A.L.-1 because it found no reasonable likelihood that Father could correct the conditions of abuse and neglect.

The circuit court held a dispositional hearing regarding Father's parental rights to A.L.-2 and A.L.-3 in July 2022. The circuit court again heard testimony from Father about his living situation and employment. Father offered into evidence a lease for his apartment and a SNAP benefits receipt to prove his employment. Like in the prior hearing, DHHR offered no evidence to rebut Father's testimony, and DHHR conducted no further inquiry into Father's living and employment situation. The circuit court terminated Father's parental rights to A.L.-2 and A.L.-3 on abandonment grounds.

Father appeals to this Court the circuit court's orders terminating his parental rights to all four children.

4

## II. STANDARD OF REVIEW

For appeals from abuse and neglect proceedings, we review questions of law de novo, defer to a circuit court's factual findings unless clearly erroneous, and affirm a circuit court's findings if plausible in light of the evidence:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[4]

With these principles in mind, we turn to Father's single assignment of error and address the circuit court's procedural errors.

---

[4] Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011) (quoting Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).).

## III. ANALYSIS

Father argues on appeal that the circuit court erred by terminating his parental rights to the four children contending he was entitled to an improvement period or more time to improve the conditions of abuse and neglect. We find no merit to Father's contention. Still, as explained below, we vacate and remand because the circuit court clearly erred when it failed to follow the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes.

We address Father's single assignment of error to emphasize that it has no merit or bearing on this Court's decision in this matter. Circuit courts *may* grant improvement periods when, among other things, the parent demonstrates by clear and convincing evidence that he is likely to fully participate in services.[5] Father demonstrated his tendency to forgo court-ordered services when he failed to comply with post-adjudication services. Given Father's unwillingness to participate in court-ordered services, he failed to demonstrate by clear and convincing evidence that he would fully

---

[5] *See* W. Va. Code § 49-4-610(2) (2015) ("After finding that a child is an abused or neglected child . . . a court may grant a respondent an improvement period of a period not to exceed six months when . . . [t]he respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period.").

participate in an improvement period. So, the circuit court acted within its discretion when it denied him an improvement period.

We vacate and remand, however, due to the circuit court's procedural errors throughout the proceedings below. First, it erred when applying the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes when it terminated Father's parental rights to C.L. and A.L.-1 rather than directing DHHR to conduct further inquiry into Father's living situation after he presented evidence that he may have corrected the conditions of abuse and neglect for which the court adjudicated him. And it did not comply with the same Rules and statutes as to A.L.-2 and A.L.-3 when it adjudicated Father as abusive and neglectful because the amended petition contained no specific allegations of abuse, neglect, or abandonment of those children. The circuit court further erred when it terminated Father's parental rights to A.L.-2 and A.L.-3 for abandonment, a condition not sufficiently alleged in the petition or specified at adjudication.

We begin with a review of the process for abuse and neglect proceedings to emphasize the purpose of each vital stage. The West Virginia and United States Constitutions establish a parent's fundamental right to parent his children, and the

7

procedure for abuse and neglect proceedings aims to balance that right with the best interests of the children.[6]

>A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts."[7]

This Court insists that applicable rules and statutes must be carefully followed if it is to protect this balance.[8]

---

[6] *See* Syl. Pt. 3, *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013) (quoting Syl. Pt. 1, *In re Willis,* 157 W. Va. 225, 207 S.E.2d 129 (1973)); *see also In re C.M.-1*, 247 W. Va. 755, ___, 885 S.E.2d 875, 886 (2023) (Wooton, J., dissenting) ("In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.") (quoting Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)).

[7] Syl. Pt. 7, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011) (quoting Syl., *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960)).

[8] *See* W. Va. R. of P. for Child Abuse & Neglect Proc. 2 (2015) ("The[] rules are designed to . . . provide fair, timely and efficient disposition of cases involving suspected child abuse or neglect."); *see also In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001) ("As this most important area of the law has expanded, this Court has insisted that the directives of applicable rules and legislative enactments must be carefully identified, respected, and incorporated within our court system. The Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes detailing fair, prompt, and thorough procedures for child abuse and neglect cases are not mere general guidance; rather, they are stated in mandatory terms and vest carefully described and circumscribed

A petition alleging abuse or neglect of a child by a parent initiates an abuse and neglect proceeding.[9] An abuse and neglect petition must "allege specific conduct including time and place [and] how the conduct comes within the statutory definition of neglect or abuse with references to the statute[.]"[10] And the petition must contain "[a] statement of facts justifying court intervention which is definite and particular and describes . . . [t]he specific misconduct, including time and place, if known, or incapacity of the parent(s) and other person(s) responsible for the child[ren]'s care . . . ."[11]

After a petition is filed, the case proceeds to an adjudicatory hearing and then to a dispositional hearing. The adjudicatory hearing and the dispositional hearing create a two-phase process.[12] At the adjudicatory hearing, to have jurisdiction over an abuse and

---

discretion in our courts, intended to protect the due process rights of the parents as well as the rights of the innocent children.").

[9] *See* W. Va. Code § 49-4-601(a) (2019) ("If the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court . . . .").

[10] *Id.* § 49-4-601(b).

[11] W. Va. R. of P. for Child Abuse & Neglect Pro. 18.

[12] Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) ("In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under [W. Va. Code § 49-4-604], it must hold a hearing under [W. Va. Code § 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case."); *see also In re A.P.-1*, 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019) ("The first phase culminates in an adjudication of abuse and/or neglect. The second phase is a dispositional one, undertaken to achieve the appropriate

neglect case, the circuit court must find by clear and convincing evidence that the children named in the petition are abused or neglected based upon conditions that existed at the time of filing.[13] After adjudication, if, during the course of the proceeding, the circuit court has reason to believe that additional abuse or neglect has occurred which was not alleged in the original petition, then it has the inherent authority to compel DHHR to amend its petition to encompass the additional evidence or allegations:

> To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the Department of Health and Human Resource[s]'s petition, then pursuant to Rule 19 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* [1997] the circuit court has the inherent authority to compel the

---

permanent placement of a child adjudged to be abused and/or neglected.") (quoting *In Re Beth Ann B.*, 204 W. Va. 424, 427, 513 S.E.2d 472, 475 (1998)).

[13] *See* W. Va. Code § 49-1-201 (2018) (defining "abused child" and "neglected child"); W. Va. Code § 49-4-601(i) ("At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence."); *see also* Syl. Pt. 8, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022) ("For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.").

10

Department to amend its petition to encompass the evidence or allegations.[14]

If it does so, then after DHHR amends the petition to include additional allegations, the circuit court must reopen adjudication to address them.[15] Defects in adjudication implicate the due process protections provided to parents subject to these sensitive proceedings.[16] A circuit court may not merely declare that no reasonable likelihood exists for a parent to correct the conditions of abuse and neglect without explicitly stating factual findings in the record to support such a conclusion.[17] Indeed, this Court has emphasized the jurisdictional nature of the adjudicatory hearing:

---

[14] Syl. Pt. 6, *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013) (quoting Syl. Pt. 5, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006)); *see also* W. Va. R. of P. for Child Abuse & Neglect Pro. 19(b) ("If new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition rather than in a separate petition in a new civil action, and the final adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition.").

[15] *Id.*

[16] *See In re K.L.*, __ W. Va. __, __, 885 S.E.2d 595, 604 (2022) ("The Court's insistence upon proper adjudication of the issues underlying abuse and neglect is not a 'hollow formality.' Rather, this Court has made clear that defects in adjudication implicate the due process protections afforded to parents and that proper adjudication is a jurisdictional prerequisite to continuation of the proceedings.") (quoting *In re A.P.-1*, 241 W. Va. 688, 695, 827 S.E.2d 830, 837 (2019)).

[17] *See* Syl. Pt. 2, *In re E.H.*, 247 W. Va. 456, 880 S.E.2d 922 (quoting Syl. Pt. 4, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620).

11

To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named.[18]

After the circuit court has adjudged a child abused or neglected, the case proceeds to a dispositional hearing.[19] At that hearing, it may consider several alternatives, with precedence given to the least restrictive alternative appropriate to the circumstances of the case.[20] Here, the circuit court entered disposition under § 49-4-604(c)(6).[21] When

---

[18] Syl. Pt. 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023).

[19] W. Va. Code § 49-4-604(c) (enumerating the disposition determinations available to the circuit court).

[20] *Id.; see also In re S.C.*, 245 W. Va. 677, 688, 865 S.E.2d 79, 90 (2021) (referencing W. Va. Code § 49-4-604(c)).

[21] W. Va. Code § 49-4-604(c)(6) (2020) ("Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency. The court may award sole custody of the child to a nonabusing battered parent . . . ."). *See also In re A. P.*, 245 W. Va. 248, 261, 858 S.E.2d 873, 886 (2021) (Walker, J., concurring) (citations omitted) ("This dispositional alternative, six, must be supported by both a finding that there is '[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' as well as a finding that termination is 'necessary for the welfare of the child.'").

proceeding under this disposition, the circuit court must make two separate findings: first that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future[,]" and second, that termination "is necessary for the welfare of the child[ren]."[22] While it is true that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child[ren,]"[23] when considering termination under § 49-4-604(c)(6), the circuit court must properly make the first finding before it progresses to a best-interest analysis.[24]

Adherence to this process matters. This Court has found plain error where the circuit court terminated parental rights based on allegations and issues which were never properly made subject of the adjudication.[25] As we have recognized,

> the failure to adjudicate [a] parent[] on matters upon which termination was based allow[s] "troubling allegations [to] wholly elude[ ] . . . commensurate attention" during the proceedings—a fundamental prerequisite to the goal of reunification of families. Recognizing the dynamic nature of issues underlying abuse and neglect proceedings, the *Lilith H.* Court reminded circuit courts of "their authority, if not obligation, to compel newly-discovered or developed abuse

---

[22] W. Va. Code § 49-4-604(c)(6).

[23] *In re S.C.*, 245 W. Va. 677, 865 S.E.2d 79 (2021) (quoting *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014)).

[24] W. Va. Code § 49-4-604(c)(6); *see also In re A.P.*, 245 W. Va. at 260, 858 S.E.2d at 886 (Walker, J., concurring).

[25] *See In re Lilith H.*, 231 W. Va. at 180, 744 S.E.2d at 290.

and neglect allegations to be made part of a petition" through amendment of the petition lest those issues remain "unaddressed."[26]

And "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the . . . case [will be] remanded for compliance with that process[.]"[27]

With this background to guide us, we turn to the specific facts related to the children in this case.

## A. Children C.L. and A.L.-1

As detailed above, the circuit court adjudicated Father as neglectful of C.L. and A.L.-1 in May 2022 due to his failure to provide housing for them. Father testified the following month at the June 2022 dispositional hearing for C.L. and A.L.-1 that he had obtained housing—a two-bedroom apartment in Covington, Virginia, that he shared with his wife and her two children. He also testified that he obtained full-time employment at

---

[26] *In re K. L.*, __ W. Va. at __, 885 S.E.2d at 603 (emphasis removed) (quoting *In re Lilith H.*, 231 W. Va. at 181, 744 S.E.2d at 283).

[27] Syl. Pt. 5, in part, *In re Lilith H.*, 231 W. Va. at 744, 744 S.E.2d at 283 (quoting Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620).

McDonalds in Virginia, where he worked for one month prior to the hearing. Father presented evidence tending to show a "reasonable likelihood that the condition[] of neglect" for which he had been adjudicated—the failure to provide C.L. and A.L.-1 with adequate housing—could be substantially corrected in the near future," and the circumstances of his supposed living situation and its adequacy for the children warranted further investigation by DHHR.

Rather than rebut Father's testimony regarding his improved housing and employment, a DHHR employee testified that she was unaware of Father's housing situation. And rather than pursuing further investigation by a home study to determine whether Father had remedied the conditions alleged in the petition and whether his new home would be suitable for the children to visit, DHHR introduced evidence of Father's earlier failure to participate in court-ordered services intended to address Father's inadequate housing for the children. But DHHR never explained why Father's failure to participate in services demonstrated an inability to correct his housing condition. Indeed, a DHHR employee testified that, if Father had a place to live and the Petition was filed on the date of the dispositional hearing, then Father "technically" corrected the condition which led to the filing of the petition. DHHR broadly asserted that Father failed to follow through with a reasonable family case plan when he stopped participating in court-ordered services, but the DHHR witness testified that the department never inquired into Father's out-of-state living situation.

15

We note that the circuit court's order was so conclusory that we cannot determine whether it terminated Father's parental rights for failure to follow the family case plan or failure to correct the housing condition for which he was adjudicated. The circuit court also suggested that Father abandoned C.L. and A.L.-1 when it found at disposition that Father had not seen or made any effort to see the children since January 2018. Confusingly, the events leading to the filing of the petition—when the children lived with Father—occurred in September 2021. And the petition never alleged Father's abandonment of C.L. and A.L.-1., and his adjudication related only to conditions of inadequate housing for them.

"'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect *on their own* or with help."[28] At the time of disposition, the evidence before the circuit court suggested that Father corrected the condition for which he was adjudicated. So, the circuit court erred when it terminated Father's parental rights to C.L. and A.L.-1 under § 49-4-604(c)(6) despite evidence that Father may have corrected the conditions of abuse and neglect, and without further inquiry into his living situation. Further scrutiny

---

[28] W. Va. Code § 49-4-604(d) (emphasis added).

16

about the best interests of the children is not necessary here because the circuit court failed to satisfy the first prong of the analysis.

### B.    *Children A.L.-2 and A.L.-3*

As explained above, DHHR failed to allege any facts applicable to A.L.-2 and A.L.-3 when it filed the amended petition adding them to the proceeding below. It simply included a cut-and-paste copy of the inadequate housing allegations relating to Father's other children. But A.L.-2 and A.L.-3 lived with their mother at all relevant times. DHHR failed to enumerate any specific or relevant allegation against Father regarding his parenting of A.L.-2 and A.L.-3. The general allegations suggesting abandonment fail to satisfy the "definite and particular" requirement of Rule 18. And, since the circuit court made "generalized findings" rather than "specific findings with regard to *each* child so named," the circuit court lacked subject matter jurisdiction to proceed to disposition.[29] As explained above, the circuit court could have compelled DHHR to amend the petition to allege abandonment of the children when it heard evidence that Father had not seen the children for at least two years, made no effort to see the children, did not know the children's birthdays, and provided no emotional or financial support to the children absent

---

[29] *See* Syl. Pt. 2, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d at 366.

17

wage garnishment.[30] Instead, it adjudicated Father as abusive and neglectful without reference to the allegations in the petition relating to Father living out of a car with his other children. Importantly, the adjudicatory order lacked a finding of abandonment. The circuit court later terminated Father's parental rights based on abandonment and a declaration that Father demonstrated no reasonable likelihood of correcting the conditions of abuse and neglect, despite the deficient adjudicatory order and without reference to allegations set forth in the petition.

We recognize the circuit court's efforts to protect these children from an absent parent. But it failed to follow the statutory requirements designed to ensure that the circumstances leading to termination adequately justify this most serious remedy. The circuit court's substantial disregard of the Rules of Procedure for Child Abuse and Neglect Proceedings frustrated the process below, and we must vacate its dispositional orders and remand the case.

## IV. CONCLUSION

For the above reasons, we vacate and remand the circuit court's July 1, 2022 order terminating Father's parental rights to C.L. and A.L.-1, and we instruct the circuit

---

[30] *See* W. Va. Code § 49-1-201 (defining "Abandonment" as "any conduct that demonstrates the settled purpose to forgo the duties and parental responsibilities to the child [.]").

18

court to hold a new dispositional hearing. As to the allegations of abandonment which arose post-adjudication, the circuit court, consistent with Rule 19(b), may instruct DHHR to file an amended petition on that basis, and upon filing, it shall reopen adjudication. We vacate and remand the circuit court's July 2, 2022 order terminating Father's parental rights to A.L.-2 and A.L.-3. The circuit court, consistent with Rule 19(b) may instruct DHHR to file an amended petition on the basis of abandonment, and upon filing, it shall reopen adjudication.

VACATED AND REMANDED WITH INSTRUCTIONS.

19