**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**June 5, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* C.N., D.N., H.N.-1, I.P., and H.N.-2

**No. 23-695 (Braxton County CC-04-2022-JA-53, CC-04-2022-JA-54, CC-04-2022-JA-55, CC-04-2022-JA-56, and CC-04-2022-JA-57)**

**MEMORANDUM DECISION**

Petitioner Father L.N.[1] appeals the November 9, 2023, order entered by the Circuit Court of Braxton County, West Virginia, terminating his parental rights to C.N., D.N., H.N.-1, I.P., and H.N.-2.[2] Upon our review, we first determine that as to D.N. and H.N.-1 the court's November 29, 2022, adjudicatory order fails to make specific findings explaining how their health and welfare were being harmed or threatened by the allegedly abusive or neglectful conduct of the petitioner. Further, we conclude that the court erred by terminating the petitioner's parental rights to all five children without clear and convincing evidence upon which to do so. Therefore, we vacate the adjudicatory order as it pertains to D.N. and H.N.-1; vacate the dispositional order in its entirety; and remand the case to the court for further proceedings consistent with this decision. Because this case falls within the limited circumstances contemplated by Rule 21(d) of the West Virginia Rules of Appellate Procedure, resolution of the case by a memorandum decision is appropriate.

Pursuant to West Virginia Code section 49-4-601, on August 30, 2022, the DHS filed a petition alleging that petitioner is the father of C.N., D.N., H.N.-1, and H.N.-2 and the

---

[1] The petitioner appears by counsel Andrew B. Chattin. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Spencer J. Davenport. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Mackenzie A. Holdren appears as the children's guardian ad litem.

[2] Additionally, pursuant to West Virginia Code section 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] Consistent with our practice in cases involving sensitive facts, we identify the parties by initials only to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

psychological parent of I.P.[3] According to the petition, the petitioner and the other adult respondents abused controlled substances in the presence of the children, petitioner and respondent mother engaged in acts of domestic violence in the presence of the children, and the petitioner failed to provide the children with a fit and suitable home. The petition alleged that the children were abused and neglected children within the meaning of West Virginia Code section 49-1-201, in that the adult respondents "knowingly or intentionally inflicted physical or emotional injury upon the children" and that the children's physical or mental health was harmed or threatened by a present refusal, failure or inability of the adult respondents to supply the children with necessary clothing, shelter, supervision or medical care.

In specific regard to D.N. and H.N.-1, although the petitioner retained all parental and custodial rights to D.N. and H.N.-1 the petition alleged that those two children had been in the legal guardianship of the paternal grandmother ("the guardian") at the time of the events alleged in the petition. The petition included contradictory statements as to the petitioner's contact with these children: it recounted the petitioner's testimony in a prior guardianship hearing that he saw D.N. and H.N.-1 daily, but also asserted that according to the guardian, the petitioner had minimal contact with these two children in that "he visits or contacts the children by telephone one to two (1-2) times per month."

Following the filing of the petition the court ordered the legal and physical custody of C.N., D.N., H.N.-1, H.N.-2, and I.P. be placed with the DHS. The petitioner waived his right to a preliminary hearing and later, in a September 2022 adjudicatory hearing, stipulated to the facts alleged in the petition. The circuit court accepted the petitioner's stipulation and adjudicated him as an abusive and neglectful parent on the ground that he did not have fit and suitable housing for the children as a result of domestic violence in the home as well as for drug use-affecting his ability to properly parent the children and ordered the petitioner to undergo a psychological evaluation. In the adjudicatory order concluding that petitioner had abused and neglected each of the children the court did not differentiate between the children residing with petitioner and those residing with their guardian.[4] Upon adjudication, the court ordered that the children remain in the legal and physical custody of the DHS in their current kinship placements.

At the first dispositional hearing in December 2022 the petitioner testified that he was employed full-time, that he was receiving counseling and medically-assisted drug treatment, and that he would comply with the terms and conditions of an improvement period. At that hearing the DHS and the guardian ad litem agreed that it would be in the best interest of the children for the

---

[3] Although petitioner is not the biological father of I.P., the petitioner and the mother of I.P. were previously respondents in an abuse and neglect proceeding. The respondent mother's rights were terminated in that proceeding. The petitioner was granted an improvement period and the court found that he successfully completed the terms and conditions of the improvement period. Accordingly, the court placed the care, custody and control of I.P. with the petitioner following that proceeding.

[4] Because the parties did not include a transcript of the adjudicatory hearing in the appellate record, this Court cannot ascertain whether the circuit court made any findings on the record as to D.N. and H.N.-1, the children who were subject to the guardianship.

court to grant the petitioner an improvement period. Based upon the testimony presented and the arguments of counsel, the court granted the petitioner a six-month post-adjudicatory improvement period requiring, among other things, that he participate in domestic violence counseling and outpatient substance abuse treatment. At a judicial review hearing in May 2023 the court granted the petitioner a ninety-day extension of his improvement period. Shortly after this hearing, on or about May 30, 2023, the petitioner tested positive for fentanyl. As a result of this positive test, the petitioner was admitted into an inpatient drug rehabilitation program.

On October 18, 2023, the circuit court conducted another dispositional hearing at which the petitioner testified. At the time of the dispositional hearing the petitioner was still admitted in the inpatient drug rehabilitation program. A crisis worker for the DHS testified and recommended that the court grant the petitioner another six-month post-dispositional improvement period with the same conditions as the petitioner's prior improvement period, in order to allow petitioner the opportunity to complete his inpatient drug rehabilitation program. At the dispositional hearing the DHS worker testified that the petitioner was doing "very well" with the inpatient drug rehabilitation program, and testified that she had not received any negative reports concerning his progress. The DHS worker recommended that the petitioner be afforded visitation with D.N., H.N.-1, and H.N.-2, who desired visitation with the petitioner. C.N. and I.P. had expressed that they did not want to visit with the petitioner; therefore, the worker recommended that the petitioner only have visitation with the children who had requested it.

Notwithstanding the recommendation of the DHS, the circuit court focused not on whether termination of petitioner's parental rights was appropriate but rather on whether an extension of his improvement period would improperly lengthen the time that the children were out of the home. Specifically, the court deemed the time limit for improvement periods as established in West Virginia Code section 49-4-610(9), to be dispositive:

> Notwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

*See id.* Ultimately, the circuit court concluded that the petitioner was not entitled to an additional improvement period and that the petitioner's rights to the children should therefore be terminated, holding that

> It's contrary to the best interest of the children to grant a post-dispositional improvement period in this case, in that we would have to exceed the period of time for which the children would be in foster care past the 15 of the last 22 months[.] . . . The Court, therefore, is going to terminate his parental rights to his four children, finding that the conditions out of which the abuse and neglect arose in this case have not been substantially corrected. There is no less-

3

restrictive alternative available to try to protect the health, safety and welfare of the infant child[ren] than the termination of his parental rights as to all of his children, and the best interest of the children requires that termination.

Although the petitioner's positive drug screen was discussed at the dispositional hearing, the circuit court did not make any specific findings relevant to that positive screen.

The circuit court memorialized its ruling in its November 9, 2023, dispositional order, which found that an additional six-month post-dispositional improvement period for the petitioner was contrary to the children's best interest. The court determined that the petitioner still had five months remaining on his inpatient drug rehabilitation program, and that prior to the end of a six-month improvement period the children would have been out of the home for more than fifteen out of the last twenty-two months. Further, the court found that the petitioner "*has not* corrected the situations giving rise to abuse and/or neglect proceeding being filed against him." (emphasis added). As a result, the court ordered that the petitioner's parental rights to the children be terminated.

The petitioner appeals the dispositional order terminating his parental and custodial rights to the children. He argues that he addressed the conditions for which he was adjudicated and that he largely complied with the terms of his improvement period, with the exception of one failed drug screen. Based upon this record, he maintains that the circuit court made insufficient findings of fact to support its conclusion that he had not corrected the conditions of abuse and neglect, and, accordingly, erroneously terminated his parental rights. Although the DHS did not request termination at the dispositional hearing, it now argues that the court did not abuse its discretion in concluding that termination of the petitioner's parental rights was appropriate.

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). With this standard of review in mind, we proceed to examine the issues in this case.

As a threshold matter, the petition alleges that two of the children, D.N. and H.N.-1, were in a legal guardianship with their paternal grandmother for years before the petition was filed. Accordingly, we must ensure that those children met the definition of an "abused child" or "neglected child" as defined in West Virginia Code section 49-1-201 (2024) based upon the conditions that existed at the time of the filing of the abuse and neglect petition. *See* Syl. Pt. 8, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

While it is alleged in the petition that the petitioner previously testified in a guardianship hearing that he sees these two children daily, it is also alleged that the guardian stated that the petitioner had minimal contact with them in that "he visits or contacts the children by telephone one to two (1-2) times per month." Moreover, the petitioner stipulated to these contradictory allegations – a stipulation the circuit court accepted without comment on the material factual contradiction therein.

Notwithstanding the petitioner's stipulations, the circuit court did not follow our law requiring the court to make specific factual findings in the adjudicatory order as to how D.N. and H.N.-1's health and welfare were harmed or threatened by the petitioner's abusive or neglectful conduct, given their placement in a legal guardianship. *See In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023). Because the court failed to make specific findings as to D.N. and H.N.-1, this Court has insufficient information to determine whether those children met the statutory definition of abused or neglected children, given their placement in a legal guardianship. Accordingly, we vacate the adjudicatory order as to D.N. and H.N.-1 and direct the court, on remand, to make specific factual findings as to how the health and welfare of those children were harmed or threatened by the petitioner's abusive or neglectful conduct, given the legal guardianship that was in place at the time that the petition was filed.

Turning to the remaining children, we note that the circuit court terminated the petitioner's parental rights pursuant to West Virginia Code section 49-4-604(c)(6). We have stated that

> [w]hen proceeding under this disposition, the circuit court must make two separate findings: first that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future[,]" and second, that termination "is necessary for the welfare of the child[ren]." While it is true that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child[ren,]" when considering termination under § 49-4-604(c)(6), the circuit court must properly make the first finding before it progresses to a best-interest analysis.

*In re C.L.*, 249 W. Va. 95, 103, 894 S.E.2d 877, 885 (2023) (footnotes omitted).[5]

---

[5] The West Virginia Legislature has determined that "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(d).

Consistent with *In re C.L.* and our established law, prior to terminating the petitioner's parental rights the circuit court is first required to make a finding that there is no reasonable likelihood that the petitioner can remedy the conditions of abuse and neglect in the near future. *Id.* Here the court did not determine that there was no reasonable likelihood that the petitioner *could* correct the issues giving rise to the abuse and neglect petition in the near future; rather, the court found that the petitioner "*has not* corrected the situations giving rise to [the] abuse and/or neglect proceedings being filed against him." (emphasis added). Simply put – this is not the correct standard. The court was required to make a "finding that there is no reasonable likelihood that the conditions of neglect or abuse *can be* substantially corrected in the near future" before proceeding to the best interest analysis for the children, and it failed to do so. Moreover, this conclusion alone is insufficient and needs to be supported by specific findings from the court. ("Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § 49–6–5(a)(6) (1998) (Repl.Vol.2001) on the record or in the order, the order is inadequate." Syl. Pt. 4, in part, *In re Edward B.,* 210 W. Va. 621, 558 S.E.2d 620 (2001)).

By not addressing in its order terminating the petitioner's parental rights the requirement that the court determine whether there is a "reasonable likelihood that the conditions of neglect or abuse *can be* substantially corrected in the near future," the court failed to consider that the petitioner had made considerable progress toward correcting the conditions for which he was adjudicated. The evidence presented at the dispositional hearing suggested that the petitioner had largely addressed the conditions for which he was adjudicated prior to his inpatient rehabilitation treatment. Further, the record suggests that the petitioner had availed himself of inpatient rehabilitation to address his drug abuse and that at the time of disposition he was doing very well in this program, with no reported problems even months after he ceased using medically assisted drug treatment. Thus, at the dispositional hearing the DHS recommended that petitioner be afforded an additional improvement period to complete the rehabilitation program. Although the petitioner's single positive drug screen was discussed at the dispositional hearing, the circuit court did not make any finding that the positive screen, standing alone, indicated there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

Our review of the dispositional hearing and the dispositional order demonstrates that the circuit court treated the timeframe contained in West Virginia Code section 49-4-610(9) as its sole justification for termination of the petitioner's rights, and failed to consider whether there was clear and convincing evidence to support the requisite findings necessary for termination. *See* W. Va. Code § 49-4-604(c)(6). Accordingly, we remand for a new dispositional hearing. *See* Syl. Pt. 5, *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013) (""Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the ... case [will be] remanded for compliance with that process[.]" Syl. Pt. 5, in part, *In re Edward B.,* 210 W.Va. 621, 558 S.E.2d 620 (2001)").

For the foregoing reasons, we vacate the November 29, 2022, adjudicatory order as it pertains to D.N. and H.N.-1 and remand this case to the circuit court for a new hearing and specific findings as to whether these children meet the statutory definition of abused or neglected children. As to the remaining children, we vacate the November 9, 2023, dispositional order terminating the petitioner's parental rights and remand this case for a new dispositional hearing and specific findings as to whether there is no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

Vacated and remanded.

**ISSUED:** June 5, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump, IV

7