**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED**

**November 5, 2025**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **P.M. and A.M.**

**No. 25-77** (Roane County Case Nos. 23-JA-8 and 23-JA-9)

**MEMORANDUM DECISION**

Petitioner father J.M. [1] ("the petitioner") appeals the December 30, 2024 order of the Circuit Court of Roane County terminating his parental rights to P.M. and A.M., who are the subject of this abuse and neglect proceeding. [2] On appeal, the petitioner argues that the circuit court erred by terminating his parental rights based on "new alleged conduct" upon which he was not adjudicated and refusing to order a less restrictive disposition. The Department of Human Services ("DHS") concedes that the circuit court erred in terminating the petitioner's parental rights on grounds upon which he was not adjudicated and requests remand to file an amended petition. The guardian ad litem ("GAL") argues in support of the court's termination of the petitioner's parental rights.

Upon review, we accept the DHS's confession of error and further conclude that the circuit court's order lacks the requisite statutory findings of fact and conclusions of law. We therefore vacate the December 30, 2024 dispositional order and remand the case for further proceedings. Because there is no substantial question of law, a memorandum decision is appropriate pursuant to the "limited circumstances" requirement of Rule 21 of the West Virginia Rules of Appellate Procedure.

In January 2023, the DHS filed a petition alleging that the petitioner neglected the children by failing to provide adequate housing and protect them from the drug abuse of their mother, K.M. [3]

---

[1] We use initials where necessary to protect the identities of those involved. *See* W. Va. R. App. P. 40(e).

[2] The petitioner appears by counsel Joseph W. Hunter. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey, Assistant Attorney General Lee Niezgoda and Assistant Attorney General Andrew T. Waight. Counsel Rebecca Stollar Johnson appears as the children's guardian ad litem.

[3] The petition included two other children who are not at issue here and a dispositional order as to those two children was entered on June 5, 2024, which this Court affirmed. *See In re A.M.*, No. 24-400, 2025 WL 2202468 (W. Va. July 30, 2025) (memorandum decision).

1

The petition alleged that the family lived in a camper with no hot water, no sewer service, and excessive clutter and trash. In February 2023, the circuit court held an adjudicatory hearing where the petitioner stipulated to failing to provide the children with adequate housing; the court's subsequent March 13, 2023 order adjudicated the petitioner abusive and neglectful on this basis. On May 30, 2023, the court also adjudicated K.M. as abusive and neglectful and subsequently terminated her parental rights on June 26, 2023.

On June 27, 2023, the DHS amended its petition to assert new allegations of substance abuse against the petitioner. The petitioner admitted to the allegations and on August 29, 2023, the circuit court entered a second adjudicatory order further adjudicating the petitioner on this basis. Upon the petitioner's written motion, the circuit court granted a six-month post-adjudicatory improvement period, which was later extended by ninety days.

In the second adjudicatory order, the circuit court noted receipt of a signed family case plan outlining the terms of a proposed post-adjudicatory improvement period "aimed at remediating the conditions of abuse and neglect alleged in the Petitions[.]" The improvement plan contained in the appendix record required the petitioner to participate in parenting and adult life skills services, visitation with the children, drug screening, and to maintain appropriate housing and employment. The plan further required the petitioner to participate in therapy to "work through trauma, depression, and anxiety with his therapist."

Although the appendix record and parties' briefs are sparse regarding the petitioner's improvement period and the events culminating in the disposition on appeal, a GAL report issued just before disposition provides some context. The GAL report indicates that throughout the remainder of 2023, the petitioner was compliant with his improvement period, but was warned about continued contact with K.M. The report further states that in early 2024, the DHS moved to suspend the petitioner's visitation, revoke his improvement period, and terminate his parental rights based on continued social media contact with K.M. and "fail[ure] to abide by medication recommendations related to mental health treatment." Notably, the report further states that in March 2024, A.M. was diagnosed with Type-1 diabetes.

According to the GAL's report, the circuit court held a dispositional hearing on April 18, 2024, resulting in the entry of disposition as to the other two children not at issue in this appeal. *See supra* n.3. As to P.M. and A.M., however, the docket sheet reflects that on May 14, 2024, the petitioner moved for a post-dispositional improvement period, which was apparently granted. The record contains neither a transcript of any hearing on the motion nor the order granting the improvement period, but there is no suggestion from the parties that the prior improvement plan was amended for purposes of the post-dispositional improvement period.

The appendix record does, however, contain the circuit court's November 20, 2024 order *terminating* the post-dispositional improvement period. The order reflects that at an October 17, 2024, hearing on the motion, the petitioner and the foster mother testified; the record contains no transcript of this hearing. The resulting order summarily finds that the petitioner 1) "has shown an inability to maintain [A.M.'s blood] sugar levels at a safe level or address the [blood] sugar levels when they reach unsafe levels[]"; and 2) "has repeatedly shown an inability to control 'fits of rage' during these proceedings." There is no reference to any testimony or other evidence supporting

these findings.[4] The order further states that there were "no compelling circumstances to continue offering services" because the children had been removed from the petitioner's custody "for at least 15 of the preceding 22 months."

At the November 21, 2024 dispositional hearing the DHS, joined by the GAL, sought termination of the petitioner's parental rights to P.M. and A.M. The DHS referenced the recent termination of the petitioner's improvement period and argued that the children "deserve[d] to be adopted." The petitioner's counsel objected, arguing that the children "love and know their father" and should be reunified. As to the necessity of termination, the petitioner's counsel argued that "these aren't behaviors that are not correctable[]" and that, at most, only the petitioner's custodial rights should be terminated. More specifically, the petitioner's counsel argued that the case began as a "dirty house" then involved "possible drug use"—both of which were corrected—and that only "in the last stretch of this" did the petitioner's alleged inability to manage A.M.'s juvenile diabetes surface. Taking issue with counsel's suggestion that only the petitioner's diabetes management deficiencies remained, the DHS argued that the petitioner also had "a mental health problem" that had "been ongoing . . . from the beginning of the case." The DHS elaborated on the "theme [of mental health] throughout the pendency of this case[,]" citing behavior such as the petitioner "not taking his medication and reacting in a way that is inappropriate, like threatening to kill himself." However, all parties agreed—and the DHS urged—that the petitioner should receive post-termination visitation due to his substantial bond with the children.

At the close of the hearing, the circuit court stated that "it would be in each child's best interest if the [c]ourt were to terminate the parental rights of [the petitioner]." The court articulated no findings in support of this determination, stating only that it was "adopt[ing] the recommended findings of fact that were placed on the record by the [DHS]" and "[the court's] findings of fact from the . . . October 17th hearing [terminating the post-dispositional improvement period]." Likewise, the resulting December 30, 2024 dispositional order finds only that "it would be in the best interest of the [children] for the parental rights of [the petitioner] to be terminated." It is from this dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner argues that the circuit court based termination of his parental rights on alleged deficiencies for which he was not adjudicated: improper management of A.M.'s diabetes and "display[ing] anger during proceedings." He asserts that these issues were not only outside of the petitions filed by the DHS, but outside of the "contemplated improvement plan[.]" The petitioner emphasizes that by terminating his parental

---

[4] The GAL's report provides additional detail regarding the apparent basis for the court's termination of the petitioner's post-dispositional improvement period. Describing the case as a "roller coaster," the report states that the petitioner is "unable to control his temper" and threatened to harm himself when visits were changed in July or August 2024. With respect to A.M.'s diabetes, the report indicates that her blood sugar "dropped dangerously low," that the petitioner "slept through the alarms," and "over dosed" her on insulin. The report further claims that at a visit, "[the petitioner] and the provider chose to recalculate the number [of carbohydrates A.M. had eaten] and gave the child the wrong amount of insulin."

3

rights due to unadjudicated issues, the DHS was held to a lower burden of proof to establish these deficiencies than if they were properly adjudicated. The DHS confesses error on this point and requests remand to file an amended petition, conceding that "issues of medical neglect and mental health . . . should be addressed by the filing of an amended petition."

This Court has long adhered to the generally accepted notion that "termination of parental rights may not be fundamentally premised on conditions of abuse and/or neglect upon which a parent has not been properly adjudicated." *In re K. L.*, 247 W. Va. 657, 666, 885 S.E.2d 595, 604 (2022); *see also In re Lilith H.*, 231 W. Va. 170, 181, 744 S.E.2d 280, 291 (2013) ("The circuit court then terminated their parental rights on the basis of their continued acrimony, which was never even alleged to constitute abuse and/or neglect in the petition or at any time during the proceedings. This action served to 'back door' adjudication."); *In re C.L.*, 249 W. Va. 95, 104, 894 S.E.2d 877, 886 (2023) (reversing termination where "petition never alleged Father's abandonment of C.L. and A.L.-1., and his adjudication related only to conditions of inadequate housing for them."). To the extent that the circuit court's dispositional determination was premised on unadjudicated issues, it must be vacated.

However, as stated above, the dispositional order on appeal contains no findings of fact and concludes only that "it would be in the best interest of the [children] for the parental rights of [the petitioner] to be terminated." This bare conclusion not only confounds our ability to ascertain the basis of the circuit court's dispositional decision but renders the dispositional order statutorily non-compliant. Rule 36(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides:

> At the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provisions of W. Va. Code § 49-4-604. The court shall enter a disposition order, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing.

More specifically, to justify a termination of parental rights, this Court has held that "the circuit court must make the findings required by West Virginia Code § 49-4-604(c)(6) (2020)." Syl. Pt. 5, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022). As is well-established, West Virginia Code § 49-4-604(c)(6) provides that termination of parental rights must be supported by "a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the child[.]" In aid of this determination, subsection (d) delineates six, non-exclusive conditions which constitute "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected'" and may be utilized to substantiate termination of parental rights. W. Va. Code § 49-4-604(d). The circuit court's order contains no reference to or findings in support of any of these statutory findings. In *In re C.S.* we vacated a court's termination of parental rights and remanded for further proceedings for these same deficiencies:

> [T]he circuit court's written dispositional orders contain none of the findings required by West Virginia Code § 49-4-604(c)(6) for the

4

termination of parental rights. The court did not find, or explain, why there is no reasonable likelihood that the conditions of neglect or abuse could not be substantially corrected in the near future.

247 W. Va. at 221, 875 S.E.2d at 359.

Moreover, conclusory declarations referencing these statutory prerequisites to termination are inadequate. *See* Syl. Pt. 4, in part, *In re Edward B*., 210 W. Va. 621, 558 S.E.2d 620 (2001) ("Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § [49-4-604(c)(6)] on the record or in the order, the order is inadequate."). Nor is a court permitted to omit these findings altogether in favor of a simple "best interests" analysis. *See In re C.L.*, 249 W. Va. at 103, 894 S.E.2d at 885 ("While it is true that '[t]he controlling standard that governs any dispositional decision remains the best interests of the child[ren,]' when considering termination under § 49-4-604(c)(6), the circuit court must properly make the [required statutory] finding before it progresses to a best-interest analysis." (footnotes omitted)). The circuit court's dispositional order contains none of the findings or conclusions necessary to substantiate termination of the petitioner's parental rights.

And while the dispositional order itself is statutorily deficient, the sparse record nonetheless reveals that the circuit court's disposition was premised on matters upon which the petitioner was not adjudicated, as conceded by the DHS. Mindful that "a confession of error does not relieve this Court of its judicial duty to independently . . . determine if [it] . . . is meritorious[,]" we agree that the circuit court terminated the petitioner's parental rights for deficiencies upon which he was not adjudicated. *Freeland v. Marshall*, 249 W. Va. 151, 160, 895 S.E.2d 6, 15 (2023). The two adjudicatory orders contained in the record confirm that the petitioner was adjudicated based on inadequate housing and substance abuse—neither of which was discussed during the dispositional hearing nor mentioned in the dispositional order. The parties' arguments at the dispositional hearing centered exclusively on the petitioner's alleged inability to manage A.M.'s diabetes and "mental health problem"—neither of which was previously determined to constitute abuse or neglect of P.M. and/or A.M. under our statutory definitions. These arguments, coupled with the circuit court's reference to its prior findings regarding the petitioner's "'fits of rage'" and A.M.'s "[blood] sugar levels," demonstrate that the circuit court's termination of the petitioner's parental rights was "fundamentally premised" on matters for which he was not adjudicated. *In re K.L.*, 247 W. Va. at 666, 885 S.E.2d at 604. As a result of this dispositional defect and the inadequacy of the order, we agree that the termination of petitioner's parental rights must be vacated.

For the foregoing reasons, we vacate the circuit court's December 30, 2024, dispositional order and remand this matter to the circuit court for further proceedings consistent with this opinion.[5] The Clerk is directed to issue the mandate contemporaneously herewith.

Vacated and remanded.

ISSUED: November 5, 2025

CONCURRED IN BY:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump, IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

[5] The petitioner also argues that termination of his parental rights was not the least restrictive alternative. Because this matter is being vacated and remanded, we need not address this assignment of error.

As to the petitioner's argument that his post-dispositional improvement period was improperly terminated for matters falling outside of his improvement plan, we find that the inadequacy of the appendix record precludes our review of that issue. Rule 7(d) of the West Virginia Rules of Appellate Procedure, requires that a "[t]he petitioner shall prepare and file an appendix containing . . . parts of the record necessary for consideration of the appeal." Moreover, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Further, the "Court may disregard errors that are not adequately supported by specific references to the record on appeal." *Id*. The petitioner failed to include the GAL's motion to terminate the improvement period, or a transcript of the hearing and exhibits admitted into evidence in the appendix record, leaving only the circuit court's meager order on the issue. We therefore decline to address this assignment of error.

6